IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

MICHAEL D. McCLENDON,     :
      :
    Claimant,     :
      :
v.      :    CASE NO. 5:10-CV-129- MTT-MSH
      :    Social Security Appeal
MICHAEL ASTRUE,     :
Commissioner of Social Security,     :
      :
    Respondent.     :

## REPORT AND RECOMMENDATION

The Social Security Commissioner, by adoption of the Administrative Law Judge's (ALJ's) determination, denied Claimant's application for disability insurance benefits and supplemental security income, finding that he was not disabled within the meaning of the Social Security Act and Regulations. Claimant contends that the Commissioner's decision was in error and seeks review under the relevant provisions of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted.

## LEGAL STANDARDS

The court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987) (per curiam). "Substantial evidence is something more than a mere scintilla, but less than a preponderance. If the Commissioner's decision is supported by substantial evidence, this

court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F. 3d 1206, 1210 (11th Cir. 2005) (internal quotation marks omitted). The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court may neither decide facts, re-weigh evidence, nor substitute its judgment for that of the Commissioner.[1] *Moore v. Barnhart*, 405 F. 3d 1208, 1211 (11th Cir. 2005). It must, however, decide if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980) (per curiam). The court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it. *Id.*

The claimant bears the initial burden of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir.1986). The claimant's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic. *Oldham v. Schweiker*, 660 F.2d 1078, 1083 (5th Cir. 1981). A claimant seeking Social Security disability benefits must demonstrate that he/she suffers from an impairment that prevents him/her from engaging in any substantial gainful activity for a twelve-month period. 42 U.S.C. ▪ 423(d)(1). In addition to meeting the requirements of these statutes, in order to be eligible for disability payments, a claimant must meet the

---

[1] Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (per curiam); *see also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

requirements of the Commissioner's regulations promulgated pursuant to the authority given in the Social Security Act. 20 C.F.R. ▪ 404.1 *et seq*.

Under the Regulations, the Commissioner uses a five-step procedure to determine if a claimant is disabled. *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. ▪ 404.1520(a)(4). First, the Commissioner determines whether the claimant is working. *Id.* If not, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. *Id.* Second, the Commissioner determines the severity of the claimant's impairment or combination of impairments. *Id.* Third, the Commissioner determines whether the claimant's severe impairment(s) meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations (the AListing@. *Id.* Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. *Id.* Fifth and finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevent the performance of any other work. In arriving at a decision, the Commissioner must consider the combined effects of all of the alleged impairments, without regard to whether each, if considered separately, would be disabling. *Id.* The Commissioner's failure to apply correct legal standards to the evidence is grounds for reversal. *Id.*

### Issues

I.     **Whether the ALJ failed to meet his burden of proving there is other work which exists in significant numbers that Claimant can perform;**

II.    **Whether the ALJ erred in failing to comply with the regulations in evaluating medical source opinions.**

## Administrative Proceedings

Claimant filed for disability insurance benefits and Supplemental Security Income benefits on October 18, 2007, alleging a disability onset date of September 21, 2007, due to heart and back conditions. (Tr. 160; ECF No. 9.) His applications were denied initially and upon reconsideration. (Tr. 72, 73.) Claimant timely filed a request for a hearing, and on April 7, 2009, a hearing was held. (Tr. 39-71.) On May 30, 2009, the ALJ entered an unfavorable ruling (Tr. 9-23), and the Appeals Council subsequently denied Claimant's request for review (Tr. 1-3). This appeal followed.

## Statement of Facts and Evidence

After consideration of the written evidence and the hearing testimony in this case, the ALJ determined that Claimant had not engaged in substantial gainful activity since September 21, 2007. (Tr. 14.) The ALJ also concluded that Claimant's severe impairments consisted of: angina, neck pain, back pain, right shoulder pain, anxiety/depression, and vertigo. (*Id.*) However, he determined that those severe impairments -- or any combination of his impairments -- did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15-17.) The ALJ next found that Claimant had the residual functional capacity ("RFC") to perform a range of sedentary work with limitations. (Tr. 18.) The ALJ determined that Claimant was a younger individual, with at least a high school education, who could communicate in English. (Tr. 21.) The ALJ then found that transferability of job skills was not relevant based on the Medical-Vocational Rules (GRIDS). (*Id.*) Considering the

Claimant's age, education, work experience, and RFC, the ALJ found that jobs existed in significant numbers in the national economy that Claimant could perform. (*Id*.) Thus, the ALJ concluded that Claimant was not disabled within the meaning of the Social Security Act. (Tr. 21.)

## DISCUSSION

### I. Whether the ALJ failed to meet his burden of proving there is other work which exists in significant numbers that Claimant can perform.

Claimant first argues that the ALJ erred at step five of the sequential analysis as found in 20 C.F.R. ▪ 404.1520(a)(4). Claimant specifically argues that the jobs which the ALJ found he could perform, a cashier and an information clerk, included skills and abilities that he does not have. (Cl.'s Br. 9; ECF No. 11.) The Regulations state that where it is determined that a claimant can no longer perform past relevant work, an ALJ must proceed to step five to determine if he or she is disabled. At step five of the sequential evaluation process, the Commissioner bears the burden of "produc[ing] evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform." *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001). "In order to be disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists." *Id.* The ALJ's step five decision must be supported by substantial evidence. *See, e.g., Miller v. Comm'r Soc. Sec.*, 241 F. App'x 631, 635 (11th Cir. 2007) (per curiam).

In this case, after finding that the Claimant would not be able to return to his previous work, the ALJ had a VE testify as to whether jobs would exist for an individual

with this Claimant's education, limitations, work experience and age. (Tr. 62-71.) Specifically, the ALJ asked the VE if a person of Claimant's age, education, and experience, who could perform sedentary work but who could not be exposed to hazards to include heights and dangerous machinery, and which would allow him to sit or stand at will, could perform any full time work which exists in the national economy. (Tr. 63.) The VE's testimony reflected that a person with this Claimant's limitations would be able to perform the jobs of cashier and information clerk, both of which were available in significant numbers in Georgia and the national economy. (*Id.*) The ALJ then asked if he were to add the need for simple, routine, repetitious tasks with one or two-step instructions to the hypothetical, would the jobs cited still qualify. (Tr. 64.) The VE, with explanation, testified that they would. (*Id.*)

Claimant initially argues that the ALJ improperly relied on the VE's testimony that he could work as an information clerk because it requires someone who can perform semi-skilled work, and he limited Claimant to unskilled work. (Cl.'s Br. 6, 7.) A review of the transcript reveals that this issue was addressed by the VE during his testimony at the hearing. The VE, in answer to the ALJ's first hypothetical which included someone of Claimant's age, education and work experience, unambiguously stated that with regard to an information clerk job, it "is performed at the sedentary, **unskilled level, SVP 2[2],** that's listed in the DOT at the light physical level, but it's generally performed these days

---

2       The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT. See SSR 00-4p.

at the sedentary level." (Tr. 64.)  Although the VE was clarifying a discrepancy with the

DOT regarding the *exertional level* of an information clerk, he also testified that the work

was unskilled, with an SVP of 2, which the ALJ relied on.  (*Id.*)  As Claimant correctly

notes, an information clerk actually has an SVP of 3, which requires over one month and

up to three months of specific vocational preparation, making it a semi-skilled job.  See

SSR 00-4p (semi-skilled work corresponds to an SVP of 3-4.)  However, for the reasons

discussed below, Claimant's claim should fail.

Claimant next argues that the ALJ erred when he limited him to repetitive work

but found that he could perform work as a cashier -- which Claimant contends does not

involve repetitive work.  (Cl.'s Br. 7.)  As to this issue, the transcript reveals the

following exchange between the ALJ, VE and Claimant's then attorney:

> ALJ:       If I were to add that work had to consist of simple, routine,
>            repetitious tasks with one or two-step instructions, would the
>            two [jobs] you cited still qualify?
>
> VE:        You're doing consistently the same type of job, the only difference
>            would be with an information clerk you might have to assess
>            different offices, but you'd still be doing the same thing.  So, I'm not
>            sure if maybe one or two step, but they'd be repetitive tasks.
>                  . . .
>
> ATTY:      Thank you, Your Honor.  I'm not sure that I understood your Honor
>            the second hypothetical question?
>
> ALJ:       Well I was asking him whether cashier or info clerk, information
>            clerk was work that consisted of one or two-step instructions and he
>            said perhaps more than one or two steps for the information clerk,
>            especially, but that the work was repetitive.  Would that be an
>            accurate summation Mr. Thompson?
>
> VE:        Yes Your Honor.

ATTY: So I guess my question would be, would those jobs be jobs he could perform, is that your testimony doctor?

     . . .

VE: Well there were two parts of the hypothetical, one being repetitive work, simple work, and then one and two step operation. Most, in my opinion one and two-step operations are SVP 1, and there's very few of those jobs with DOT, but simple work that's repetitive in nature that doesn't require any transferable skills, these jobs would be consistent with that. (Tr. 64-66.)

The testimony shows that the VE found the cashier job to be consistent with the hypothetical asked by the ALJ involving repetitive work. Again, as he did above, the ALJ relied on the information provided by the VE.

As to both arguments that the ALJ erred in relying on the VE's testimony in ultimately determining that Claimant was not disabled, Social Security Ruling 00-4p specifically states that:

> Occupational Evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an **apparent** unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearing level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency. (emphasis added.)

The Eleventh Circuit, in ruling on this issue, has found that "[w]hen the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT." *Jones v. Apfel*, 190 F.3d 1224, 1229-30 (11th Cir. 1999).

In this case, after listening to the VE's testimony regarding Claimant's past relevant work and the responses to the ALJ's hypothetical questions, the ALJ asked the

VE if his testimony was consistent with the DOT as is required by SSR 00-4p. (Tr. 65.)

Specifically, the exchange went as follows:

> ALJ: I think, other than your explanation about the fact that information clerk is listed in the DOT at the light level but the jobs you cited are performed at the sedentary level and possibly that the work described by Mr. Mclendon might have reached the heavy level although shown at the medium level, any other inconsistencies with the Dictionary of Occupational Titles?
>
> VE: I don't believe so Your Honor. (*Id.*)

No other conflicts were noted by the VE regarding his testimony. There was a minor "apparent conflict" between the VE's testimony and the DOT as to the exertional level discrepancy of the information clerk job, and pursuant to SSR 00-4p, a "reasonable explanation" was elicited from the VE. (Tr. 65.)

Claimant argues that the ALJ erroneously failed to confirm that the VE's testimony was correct, arguing that an ALJ can rely on the testimony of the VE "only when it's reliable." (Cl.'s Reply Br. 3; ECF No. 13.) The cases cited by Claimant, however, are unpersuasive. The Eleventh Circuit recently rejected a claimant's argument that the ALJ erred "by crediting the VE's testimony because it was unreliable and unsupported" finding that:

> [t]he Commissioner may rely on a VE to "offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work...." 20 C.F.R. § 404.1560(b)(2); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required."). . . . Moreover, "an ALJ may rely solely on the VE's testimony" to support his finding. *Jones*, 190 F.3d at 1230.

*Leonard v. Comm's'r of Soc. Sec.*, Slip Copy, 2011 WL 165439 (11th Cir. 2011). Claimant asserts that "[t]he Government's position, if taken to its logical conclusion, renders both the DOT and the Commissioner's own ruling superfluous, as it accepts the vocational testimony even if it is shown to be wrong." (Cl.'s Reply Br. 3.) Claimant's belief, however, would necessarily render the testimony of the VE meaningless and require the ALJ to become a vocational expert, which is outside the scope of his authority. A recent case, which Claimant cites because it ultimately found that the ALJ erred in relying on the inaccurate testimony provided by the VE, addressed this issue by noting that "in this circuit, the ALJ is not required to go on a searching inquiry into the contents of the DOT to verify consistency with the testimony of the VE." *Akins v. Comm'r of Soc. Sec.*, slip copy, 2009 WL 2913538; citing *Miller v. Comm'r of Soc. Sec.*, 246 F. App'x 660, 662 (11th Cir. 2007). This Court has specifically held that where the issue is "whether remand is warranted when the conflict between the VE's testimony and the DOT is not identified during the hearing or in the ALJ's decision" and the claimant is "represented by counsel at the hearing and the VE was subject to cross examination," "the ALJ need not independently corroborate the VE's testimony and should be able to rely on such testimony where no apparent conflict exists with the DOT." *Massey v. Astrue,* 2008 WL 623196 at ** 7 (M.D.Ga. March 4, 2008) (citations omitted).

After thorough review of the Regulations and relevant case law, it is found that the ALJ properly relied on the testimony of the VE and Claimant's attorney, who had a right to cross examine the VE regarding any conflict between his testimony and the DOT as to the skill level and repetition of tasks of specific jobs, did not challenge that testimony.

Therefore, in this set of circumstances, no error is found in the ALJ's reliance on the testimony of the VE, and this claim should fail.

**II.      Whether the ALJ erred in failing to comply with the regulations in evaluating medical source opinions.**

Claimant next argues that the ALJ improperly evaluated the opinion of his treating physician, failed to recontact the treating physician, and failed to weigh the opinion of one of the consultative examining physicians.  (Cl's Br. 8.)  It is well settled that the opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding it.  *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985).  A treating physician's report may be discounted when it is not accompanied by objective medical evidence or when it is conclusory.  *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).  The ALJ can also reject the opinion of any physician when the evidence supports a contrary conclusion or when it is contrary to other statements or reports of the physician.  *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991); *see also Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984).

To give a medical opinion controlling weight the ALJ "must find that the treating source's opinion is 'well supported' by 'medically acceptable' clinical and diagnostic techniques.  The adjudicator cannot decide a case in reliance on a medical opinion without some reasonable support for the opinion."  SSR 96-2p.  Additionally, the ALJ must find that the treating source's opinion is "not inconsistent" with the other "substantial evidence" of record.  *Id.*

11

The Regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a); see SSR 96-5p. An ALJ is not required to give significance to opinions of any medical provider where the opinion relates to issues reserved solely for determination by the Commissioner; this includes any physician's opinion which states that he or she finds the claimant disabled or that he finds that the claimant's impairments meet or equal any relevant Listing. 20 C.F.R. §§ 416.927(e)(1), (2)& (3); SSR 96-5p. Determinations of disability or RFC "are not medical opinions, . . . but are, instead, opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case; *i.e.*, that would direct the determination of disability." 20 C.F.R. § 404.1527(e); see SSR 96-5p. The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error. "Good cause" is found to exist when the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (omitting internal citations).

Claimant contends that the ALJ's reasons for discounting the opinion of Dr. Williams, his treating internist, are not supported by substantial evidence. (Cl.'s Br. 8.) Specifically, he claims that the ALJ: incorrectly determined that Dr. Williams' treatment

notes did not support the functional limitations he assessed, i.e. that Claimant would need to lie down for at least two hours during the day and was unable to work a full eight-hour day of sedentary work; erroneously found that Dr. Williams's treatment was routine and conservative; failed to seek reasons for Claimant's lack of treatment; failed to consider that Dr. Williams' opinions were not inconsistent with those of the consultative examiner; and improperly sought a consultative examination instead of recontacting Dr. Williams. (*Id.*) Claimant's arguments are without merit.

After a review of the record, it is found that the ALJ clearly articulated his reasons for giving less weight to the opinion of Dr. Williams and, further, that his reasons constitute good cause. The ALJ based the decision on the evidence of record, particularly the treatment notes of Dr. Williams, which do not reflect the severity he alleges in his June 20, 2008, letter (Tr. 294) regarding his opinion of Claimant's RFC. As the Commissioner noted, the only support for Dr. Williams' opinion in the letter was a comment to "see office visit 4/25/08." The notes from that office visit listed Dr. Williams's findings that Claimant had a lumbar spine disorder, a cervical spine disorder and right shoulder arthropathy, and a notation that Claimant could not work. (Tr. 301.) Claimant was prescribed pain medication and a muscle relaxer and told to follow up with him as needed. (*Id.*) These findings do not support his opinion that Claimant could not work. No error is found with regard to the ALJ's discounting of Dr. Williams's opinions.

The ALJ also relied on the fact that Claimant's treatment was conservative and infrequent. (Tr. 18.) Claimant argues that the ALJ's finding ignored the opinion of Dr. Clements, a cardiologist who determined that although Claimant had an occluded right

coronary artery he did not require more surgery and could be treated with medication. (Cl.'s Br. 9.) Claimant contends that this treatment decision only reinforces the severity of his cardiac impairment. However, the notes of Dr. Clements, who knew of Claimant's medical history, stated nothing about the Claimant's "veins [being] too small for grafts," nor any further need for surgery, but merely that he found that Claimant's condition could be controlled with medication, and that he needed to stop smoking and take better care of himself. (Tr. 247.) Therefore, no error is found with regard to the ALJ's assessment of Dr. Clements' opinion as it related to Claimant's treatment.

Claimant's contention that the ALJ's finding that his treatment was "limited, infrequent, or scant," and, thus, was required to seek reasons for any lack of treatment as required by SSR 96-7p, should also fail. The Regulations, at SSR 96-7p, only require an ALJ to elicit a reason for a claimant's lack of treatment when he discounts claimant's subjective allegations due to that lack of treatment. As the Commissioner correctly noted, the ALJ, in assessing his RFC, did not find that Claimant failed to seek medical treatment in discounting his subjective allegations of pain, but found that the treatment he did receive for his impairments was conservative and routine. (Comm'r's Br. 8.) Thus, no error is found.

The ALJ further relied on the assessments and evaluations of two non-examining state agency consultants, a consultative examining physician, as well as the claims of pain and limitations as subjectively alleged by the Claimant which, based on the medical evidence, the ALJ found only partially credible. (Tr. 18.) Claimant contends the ALJ not only erroneously failed to discuss the limitations found by Dr. Bush, the examining

consultant, but that by utilizing a consultative examiner, the ALJ "implicitly agreed" that he needed more information about Claimant's case, which he should have sought from a treating physician pursuant to 20 C.F.R. § 404.912(e).  (Cl.'s Br. 10, 11.)

The record reveals that the ALJ did obtain a consultative examination from Dr. Bush, whose opinion he incorporated into his decision.  (Tr. 19.)  Dr. Bush, as Claimant asserts, did opine that he was limited to occasional sitting, standing, walking, lifting, and "pushing/pulling/grasping," which Claimant contends would preclude him from the sedentary jobs listed by the ALJ.  (Tr. 256).  The ALJ's findings, however, reveal that although he found it reasonable to include some of the restrictions as found by Dr. Bush, he could not find that Claimant was more restricted than he had determined in the RFC, given the treatment records and the unremarkable physical examination by Dr. Bush.  (Tr. 19.)  Thus, no error is found as to this claim.

Regarding Claimant's claim that the ALJ should have recontacted his treating physician before ordering the consultative examination, the code section applicable to this issue, 20 C.F.R. § 404.1512(e), states:

> (e) *Recontacting medical sources.*  When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision.  To obtain the information, we will take the following actions.
> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available.  We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does

not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source. . . .

(2) We may not seek additional evidence or clarification from a medical source when we know from past experience that the source either cannot or will not provide the necessary findings.

In his brief, Claimant states that "[t]he Agency may only obtain consultative examinations if it determines that it needs more information, and has followed its own procedures to obtain the information from the treating source." (Cl.'s Br. 11.) Subsection (f) of 20 C.F.R. § 404.1512 specifically states:

If the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification from your medical source, we will ask you to attend one or more consultative examinations at our expense. See §§ 416.917 through 416.919t for the rules governing the consultative examination process. Generally, we will not request a consultative examination until we have made every reasonable effort to obtain evidence from your own medical sources. However, in some instances, such as when a source is known to be unable to provide certain tests or procedures or is known to be nonproductive or uncooperative, we may order a consultative examination while awaiting receipt of medical source evidence. We will not evaluate this evidence until we have made every reasonable effort to obtain evidence from your medical sources.

In this case, although Claimant states that the ALJ erred, he has failed to provide any evidence that the record was inadequate for the ALJ to make a determination. Medical evidence is not "inadequate" simply because it fails to support Claimant's allegations. See 20 C.F.R. § 416.912(e). The ALJ discounted the opinion of the treating source, Dr. Williams, with no indication that he felt the evidence inadequate to make that

16

determination. Thus, the ALJ was under no obligation to recontact Dr. Williams before ordering a consultative examination of Claimant by a state agency physician.

Furthermore, although the Eleventh Circuit has not addressed this issue directly, another Court has found that a failure by the ALJ to recontact the claimant's treating physician before ordering a consultative examination after discounting the opinion of the treating physician has been found to be harmless where the claimant was given the opportunity to supplement the record with additional medical reports from the treating physician. *Fink v. Barnhart*, 123 F. App'x 146, 148 (5th Cir. 2005).

Upon review of the entire record, the Commissioner appears to have committed no error in applying the proper legal standard in assessing the opinions of the medical sources, and substantial evidence supports his decision. As such, no error is found with the ALJ's determinations regarding the medical source opinions.

## CONCLUSION

WHEREFORE, it is the recommendation to the United States District Judge that the decision of the Commissioner be **AFFIRMED**. Pursuant to 28 U.S.C. § 636(b)(1), the Claimant may serve and file written objections to this recommendation with the UNITED STATES DISTRICT JUDGE within fourteen (14) days after being served a copy of this recommendation.

THIS the 20th day of April, 2011.

S/ Stephen Hyles                                    .
UNTED STATES MAGISTRATE JUDGE